# CHARLESTON

59 360
60 312

## KENNEWEG Co. v. MILEY.

Submitted January 31, 1906.   Decided April 10, 1906.

1. TRIAL—*Directing Verdict.*
   Where a case depends on the weight of evidence and deductions from it, and conflicting evidence and credit of witnesses, the court should not instruct a verdict. (p. 362.)

Error to Circuit Court, Hardy County.

Petition by the Kenneweg Company and others against John R. Miley. Judgment for plaintiffs, and defendant brings error.

*Reversed.*

H. B. GILKESON, for plaintiff in error.

BENJAMIN DAILEY, M. W. GAMBLE, and C. W. McCAULEY, for defendants in error.

BRANNON, JUDGE :

The Kenneweg Company and other creditors of John R. Miley levied certain executions against him upon a stock of goods as his property.   J. Watson Miley executed a suspending bond and a forthcoming bond and claimed that said stock of goods was his property and not liable for the debts of John R. Miley.   Then the Kenneweg Company and other creditors filed a petition in the circuit court of Hardy county asserting the liability of said property to their execution and asking that the court make an order requiring J. Watson Miley to appear and state the nature of his claim to said property and maintain or relinquish the same, and the court made such order, and when J. Watson Miley appeared the court stated as the issue whether the stock of goods was the property of John R. Miley or J. Watson Miley and made the creditors plaintiffs in the issue.   This issue was tried by the jury, and on the trial the court instructed the jury that the evidence did not warrant a verdict for the defendant, and required it to find for the plaintiffs, and the jury did so, and the court gave judgment that the property at the time of said levy was the property of John R. Miley and subject to the

levy of said execution. J. Watson Miley brought the case to this Court on writ of error.

The only question of moment in this case is one purely of fact. Was the stock of goods the property of John R. Miley or J. Watson Miley? It was purchased from S. L. Harper in the name of J. Watson Miley; but the creditors claim he was a mere figure-head, and that the purchase was really for John R. Miley, and that it was his stock of goods, and that the business, though carried on in the name of J. Watson Miley, was really the business of his older brother, John R. Miley, who was a man of extensive business, but had met with business disaster, and was utterly insolvent, and that the purchase and transaction of the business in the name of J. Watson Miley was a sham to protect the property and business from the pursuit of John R. Miley's creditors. A great number of witnesses were examined, a great number of facts and circumstances were given in evidence; the evidence was materially conflicting in vital matters; and not only this, but the credit of witnesses was deeply involved. The versions of John R. Miley and J. Watson Miley as witnesses were in the case, and their credit involved. The manager of the store business, Shearer, whose evidence was vital in the case, necessarily so, because he conducted the store business, was a witness. Not only was his credit involved from the nature of the case, but his general reputation for truth and veracity was attacked and a number of witnesses introduced as to it. I think this statement is enough at once to show that the case was one peculiarly appropriate for a jury. It is useless to detail evidence and circumstances. It is enough to say that the decision of the court depended on the quantity and weight of evidence and inferences to be deduced from facts and circumstances, numerous and varied in kind, and depended upon their weight, that is, jury questions. *Smith* v. *Railroad*, 48 W. Va. 69. Then, too, the evidence was highly conflicting. Especially reflect that Shearer's evidence was assailed and witnesses introduced to impeach him were equivocal in their evidence, and the force of their evidence depended very largely upon their faces, countenances, demeanor, reluctance and emphasis, which could be judged of only by the jury. Scarcely any case was more appropriate for a jury. We cannot think that the court carried out legal principles in with-

drawing the case from the jury.   In ,*White* v. *Brewing Co.*, 51 W. Va. 259, it is held that a court may instruct a verdict where the evidence plainly and decidedly preponderates; but at the same time it put in the precautionary point, "If the material facts are doubtful and a verdict for either party would be sustained, the circuit court should not instruct the jury to find against such party."   It is very difficult, in practice, to lay down in words just where a court may strike out evidence or instruct a verdict.   Each case depends upon itself largely.   This difficulty is well stated by Judge SANDERS in *Cobb* v. *Glenn Boom and Lumber Co.*, 57 W. Va. 49, where many of the authorities are discussed.   Some of the cases there cited say that wherever the evidence tends in a fairly appreciable degree to sustain a plaintiff or defendant, the court should not strike out the evidence or instruct a verdict.   That case holds what is, I think, the true test, that is whether the court should set aside a verdict in favor of the party against whom the verdict is instructed.   In *Manns-Bruning Shoe Co.* v. *Prince*, 51 W. Va. 510, we held that "A verdict which, on the fixed facts of the case, is contrary to law, must be set aside."   But what are the fixed facts of this case?   Are they indisputable under the evidence?   Cannot men reasonably differ about them?   Test this case by these principles.   We say that the questions of fact solving this case are severely involved under the evidence.   Especially we add, as a matter of decided emphasis in this Court, that the evidence is conflicting, not merely upon clashing circumstances, but the credit of the witnesses is involved.   We cannot say under the peculiar character of the evidence of witnesses assailing the general reputation for truth and veracity of Shearer, whether he is to be believed or not, their evidence being equivocal and indefinite; but jurors face to face with the witnesses, face to face with Shearer, could judge as we cannot.   Granting that if it were a question of mere preponderance, this Court might take up the scales and weigh the evidence and say whether it greatly and decidedly preponderated for the creditors; yet when the credit of the witnesses is involved, not only of the two Mileys, but especially of Shearer, our path would go through the forest of uncertainty.   This is for a jury. *Young* v. *Railroad*, 44 W. Va. 218.   We are unable to say what was proven in this case, and in view of another trial

we desire to be understood as saying that we do not express an opinion on the evidence, because we say that it is a proper case for the decision of a jury.

The deposition of J. Watson Miley was introduced in the case by the plaintiffs. We think there is no error in this. It was given in another case in which the debts of John R. Miley were being ascertained, and in which he filed a claim, and it involved matters involved in this suit, and it was admissible as admissions by J. Watson Miley proper to go before the jury.

Therefore, we reverse the judgment, set aside the verdict and remand the case for a new trial.

*Reversed.*